I am pleased to court William Morrison for Appellant Hallmark Specialty Insurance Company. I would like to reserve five minutes for rebuttal. The language and the purpose, we are looking today at California Insurance Code 11-580.9, particularly subsection H, but all of 11-580.9 is relevant to the court's analysis. The purpose of the entire statute, 11-580.9, and the cases interpreting it, look at, deal with primary policies. The fact that the word primary does not appear in H is because it would be superfluous if it were there. Let me explain. The phrase of valid and collectible insurance appears at least twice in the statute. Once in sub D and also again in sub H. That phrase has been interpreted uniformly by the California best policy such as the Hallmark policy. The Hallmark policy is not a collectible policy and therefore subsection H does not apply to it. Subsection H does not apply to ordering the priority between Hallmark and Appellee. They are identical terms in the same statute. And legally, logically, and as a matter of statutory interpretation, under California law and Ninth Circuit law, and I appreciate it's a diversity case, that the words, the same words in a statute are given the same meaning. And the phrase collectible, for instance, in the case, the Hellman case, interpreted collectible to refer to, not refer to an excess policy because an excess policy is not collectible until all primary policies exhaust. I asked you about the people in the business of a trucker. Can you tell me which of the policies at issue here give coverage to a named insured in the business of a trucker? Yes, it's the policy underlying ours, Northland. And Hallmark also insures Northland. And so why wouldn't it make sense to view those under the statute as the ones we look to first? Because the Hallmark policy is not collectible. You need to look at this, looking at the language of the statute, it requires that it only applies to two or more policies affording valid and collectible insurance. The Hallmark policy does not afford collectible insurance until... If there was no third policy, it would be collectible, wouldn't it? Indisputably. If there was no, if national fire did not exist, so there was no insurance for a trailer. Yeah, then we'd never get to H in any event. So isn't it kind of circular to talk about whether it's collectible? Because isn't that the question of what we should look to first? I mean, if there was no policy on the trailer, we would say it was collectible. Right. That's why you would never look at 11,580.9 because 11,580.9 only deals with primary policies, not excess policies. But the statute tells us to look at the insurance afforded to people who are in the business of a trucker. That's right. And it modifies that, Your Honor, by saying when two or more policies affording valid and collectible insurance, the hypothetical the court posits is not the facts of this case. The facts of this case are that national fire affords valid and collectible insurance. And so the first valuable valid and collectible insurance that applies is the Northland policy. And then next, that is also valid and collectible, is the policy for the trailer that specifically describes the trailer. Hallmark's policy is not valid and collectible until, under the facts of this case, because the national fire policy does in fact exist, until the national fire policy is exhausted. The statute is merely referencing truckers and trailers. There's other language in the statutory in the statute. And the other language in the statute refers to valid and collectible insurance. Hallmark's insurance is not collectible until all primary insurance has exhausted. And indeed, the California whole. There is no contrary law on that issue. And so if California courts interpret the exact phrase valid and collectible in the context of another subsection of 11 580.9, as the courts do, such as in subdivision D, then necessarily, legally, logically, as a matter of statutory interpretation, that phrase, that identical phrase in H, has the same meaning. Would there be any policy reason for having it go first to the insurance for the tractor, and then to the trailer, and then back to the tractor? Isn't it much more likely that the person at fault for the driving accident is the tractor? No, because this is not a question of fault, Your Honor. This is a question of which insurance applies. I understand, but when the legislature is thinking about what order to have the insurance kick in, wouldn't it make sense for those to be in the order where if they're insuring the tractor, they have the incentive to make sure the driver is a good driver, to give discounts for a good driving record? Having the insurance that's about the tractor come first seems like a, as a policy matter, to make a lot more sense, doesn't it? Well, actually, whether it does or not, that is not what the legislature did. That is not the reasoning behind what the legislature did. That's not the public policy behind what the legislature did. The purpose of 11-580.9 is not to have the insurance on the for instance, and in fact, 11-580.9 is precisely not about legal liability. For instance, frequently where these cases come up is that the driver of the vehicle, the driver's insurance applies secondarily because the driver is applying a car that is owned by someone else, and the cases are legion on this issue, where the car is described and rated. Nevertheless, the legislature in its wisdom decided that the car, the vehicle where the vehicle is described and rated is the one that goes first. And the owner, the owner had nothing to do with the driving. The driver was the one that was negligent. So the positive public policy is actually contrary to what the California legislature has done with other portions of the same statute, 11-580.9, the other subsections. So what the court is positing is directly contrary, directly contrary to what the legislature has done with 11-580.9. The court in Zurich, 85 Calab III, 481-485, and I'm about to be done here, specifically speaks about 11-580.9 is about determining the priority of coverage between co-insurers. California interprets the word co-insurer uniformly as insurers on the same level. Among other, one of those cases is cited by Appley, the Century Select case. Another case is the Fireman's Fund case at page 1299. Co-insurers, so Zurich says 11-580.9 is about co-insurers. Co-insurers are only at the same level. Hallmark is not at the same level as Appley. Hallmark is specific excess. The other two are primary. I will reserve the rest of my four minutes and 30 seconds. Thank you. Thank you, Your Honors. Oh, I think we're getting an echo. Is it possible, Mr. Morrison, to put your computer on mute? Well, let's try that. Thank you, Your Honors, and may it please the court. My name is Edward Tafe, and I am counsel for Appley's, the Continental Insurance Company and National Fire Insurance Company of Hartford. I would just like to start by looking at the statutes themselves. Before I look at 11-580.9, I'd just like to read the legislative declaration in the prior provision, 11-580.8. It says, the legislature declares it to be the public policy of this state to avoid, so far as possible, conflicts in litigation with resulting court congestion between and among injured parties, insureds, and insurers. That would be Mr. Morrison's client and my client, insurers, concerning which among various policies of liability insurance and various coverages therein, with emphasis on the various, different kinds of coverage, are responsible as primary, excess, or sole coverage, and it goes on from there. The point I'd like to emphasize is, one, the legislature is very expressly aware that there are different kinds of coverages, and it wants to resolve conflicts between coverages in certain factual situations, and it does that throughout the ensuing statutory provision, 11-580.9, and including specifically in subsection H, which we're dealing with here today. But I would also like to point out that this distinction between primary and excess policies shows up all over 11-580.9. It's in section A-1. It's in section A-2. It's in section C, and section E, and G, and finally in section H, which we're here to discuss today. And the issue is simply that when you have a statute like this, it is incorporated into all the policies that fall within the subject matter of the statute. So, all of the policies must reflect the law and public policy of California, and all these policies that are at issue were written after the time that the California legislature amended this statute in 2006 to cover these situations where you have a power unit and a trailer insurer. I can cite a couple of cases, if it will please the court, that are not in the appellee's response and one is McHugh v. Protective Life Insurance, and this is 12-Cal-5-213-Pinpoint-Site-253, and that's 2021. And that simply is for the general proposition that it is a rule that provisions required by the statutory and decisional law enforced at the time the policy is issued are read into each policy and become a part of the contract with full binding effect upon each party. Now, as I understand the argument that the Hallmark policy was somehow not valid and collectible, it's that it was written with such provisions that Hallmark is now arguing that they ensure. Well, that's directly contrary to the statute, and any provisions to that effect, even if they're there, and I'm not arguing one way or the other whether those provisions are there, because the national fire policy has provisions too, and if we ever were comparing the provisions of the policies and determining this case in that way, we would compare our policy language with Hallmark's policy language. That would be the way it would be done in a case like this. Now, because the legislature has spoken on this question, we don't need to look to the language of the policies. I would accept for purposes of the argument that the Hallmark policy states that it should apply access to a policy issued to an insurer that directly insured a trailer, but it doesn't matter. For one thing, the policy does not say that, that's not an allegation in the case, but what I'm trying to point out, your honors, is that even if the policy said something that specific, that would be a legal nullity, because section 11580.9 is clear on this point that direct insurers of a power unit are primary to direct insurers of the trailer, and I would like to just point out another thing, which is that this is an excerpt of record page 128, and it's simply the allegations in the underlying complaint, and I would just point out that what Judge Friedland was referring to earlier accurately described the allegations in the underlying complaint, which is that there and the power unit owner were sued, and the way that case was resolved was that the insurers, two insurers, Northland and Hallmark, paid to settle that case against the power unit and the driver, and so the insurance issued by the trailer never came into play in that case, and it never should have come into play. There was never an allegation that the name insured of National Fire, the trailer renter, ever did anything negative, so if you're even turning from the statute and looking just generally to the equities of the case, if you're ever trying to find a case where you would question the wisdom of the California legislature in how they crafted 11-580.8 and 11-580.9, this would not be that case. I could see a hypothetical case. How often do disputes about this come up? Is this language of H the source of a lot of litigation in California? Your Honor, it is actually not the source of a lot of litigation. The other sub parts of the statute have been litigated. There is one published decision from the Court of Appeal which holds that the primary insurer of the trailer is excess to the primary insurer of the power unit, so it's the same issue. It's just that they weren't evaluating towers of insurance in that case. This particular argument that you're making, there seems to be a great divide between you and your adversary, and it is a serious question. There's tons of drivers in California, and whether you're going to be excess or not becomes very important, not only for cases, but even for settlement of rates. It seems to me to be a big issue. You two are divided on it. What would you think of us asking the Supreme Court to make the call on what the statute really says? Thank you, Your Honor. I would say to that that I believe that the district court, Judge Gilliam, got this analysis exactly correct. There might be other things I would have said about it if I were doing the analysis. Well, I understand, but my question isn't who's got the best argument between two people in front of us. Because it is a California problem and a deep California problem, and it is at least to do that. I'm sure that you'd like to have the answer tomorrow and insert that into a very busy Supreme Court. It can be problematic, but I'd like you to have your position. My position, Your Honor, would simply be that I don't believe that it is arguable that the statute can be read the way that Hallmark is asking the court to read it. The California legislature in 2006 revised the statute to add subparagraph H, which specifically deals with this issue. The legislature shows by the way it words both 11580.8 and 11580.9 that it understands this difference between different lines of insurance. Insurance is written on a primary basis. It's in a dispute, and we want to resolve those disputes as far as possible to avoid conflicts. That's what the legislature said. This is one of the ways that the court is trying to resolve conflicts by applying it in a case like this where the parties need only look at who is the insured of the insurer. Other factors, policy language, where they are in a tower. It's conceivable you could have multiple lines of coverage and multiple layers of coverage, and they could all be pointing the finger. You could have nine insurers pointing the finger in a situation like this. How could you resolve that? The way you do it is you read the plain this is a call that the Ninth Circuit can make because the language is so clear. Okay, you prefer not to bother the Supreme Court. I didn't find any Court of Appeal cases in California on this issue, did you? Yeah, there are a few cases. There's Scottsdale, which is cited in the brief. So, Scottsdale Indemnity versus National Continental, and this is 229 Calap 4th, 1166, and the year is 2014. So, in the past 10 years, this has been addressed. I was trying to explain earlier in my argument that that is a case where the two disputant insurers were both primary. One was primary to the trailer, one was primary to the power unit. They had a fight. The court said the power unit goes first based on 11580.9 subsection H. So, it wasn't this specific fact scenario, but the Supreme Court has looked generally at 11580.9 and pointed out that it's the public policy of California and it's to be followed. Thank you. That case is called Century Select versus Fidelity and Guarantee, and it's 46 Cal 4th, 204. Thank you. And what is your response to counsel's argument about that policy is not collectible? Well, I agree with the comment made earlier by Judge Friedland that this is a circular argument. If a policy isn't valid and collectible because it's written on an excess basis or has an My understanding is that what counsel is referring to is an other insurance clause in the policy that says that it's excess to other insurers, other insurance generally. Well, all policies have that. So, this would be an exception to 11580 that would solve the rule because all policies would be able to say we're not valid and collectible because our policy doesn't apply or it shouldn't apply, but for this statute. And so, that's one thing. The other thing is that if you write a policy so as to do a workaround of 11580.9 so as to make your policy supposedly not valid and collectible if you're the insurer of the power unit, you're writing your policy in a way where those provisions that you're relying on would be null because they would be against the public policy of California as set forth in these statutes by the California legislature. So, and all of those provisions, these provisions of 11580.9 are incorporated into the policies. So, we have to live by them. Hallmark has to live by them. Northland had to live by them. They're who ensure power units and trailers have to abide by the statute. If there's any other questions, I'll be happy to respond to them. I see my time's running down. Thank you. Thank you, Your Honors. Thank you very much. You have some time for rebuttal. Thank you, Your Honor. And there it is. Very briefly, arguing about what is the public policy of the state and whether vehicle code sections are incorporated into insurance contracts. That's just a red herring. Of course, they are. And that's just a non-issue. No one's arguing it, which is precisely why the cases counsel cited were not even mentioned in our brief. It's a shrug. Of course, California statutory law is incorporated into insurance policies. The point is that the public policy was stated by the legislature in 1970. In 1978, you have a court, a California court, describing what 11580 is about. And it's about co-carriers, co-insurers, pardon me, co-insurers. And the case law in California before 1970 and after 1970 is crystal clear and without dispute that co-insurers are primary insurers. Next, the argument is that anyone who writes an excess policy in a trucking context is somehow violative of, is in violation of California public policy. With all due respect and kindness, that is complete nonsense. Trucking companies have, trucks are dangerous, trailers are dangerous. We all hear about those accidents all the time. They inevitably have excess coverage. I don't think he was arguing that you can't have excess coverage. I think he was just arguing that the tractor's tower of insurance would kick in before the trailer. Fair enough. And the problem, and to address that more specifically, and I completely agree, your honor. And to address that more specifically, the court is, the court will be ignoring applicable California law that has interpreted the term collectible in 11580 as meaning it applies to excess insurance that when any primary policy has not been exhausted. And so the court will be basically ruling that the word collectible in H means something different than it means in D as interpreted uniformly by the California courts. I submit that that is problematic. I also submit that that is not what was intended by the California legislature. What is your best case from the California court of appeal to support your position? Well, I have a number of positions on that specific point. It's Hellman. On the issue that collectible means references excess and not a co-primary, Hellman is my best case in that. Judge Wallace, addressing your earlier question to Appalese council, I agree that this is a uniquely California issue. I'm not urging the Ninth Circuit to send it to the California Supreme Court. I think that it would be perfectly fine to do so. And it may make sense if the court has pause at all how to interpret this statute. As I said, there is, there will be an inconsistency within the very same statute if the court ignores the word collectible and does not apply that as other California courts have to reference a specific excess policy as the one offered by, issued by Hallmark here. So in your view, how often does this arise? We don't want to bother the California Supreme Court with something that hardly ever comes up. And I wonder if the fact that there isn't really case law on this means it doesn't really come up very often. All I can do, your honor, is speak anecdotally. And as someone who's researched the law, as someone who's researched the law, and I'm sure the court has researched the law at least as much as I have, it does not come up much. The reason it doesn't come up much, and I, and I believe counsel for Appley has been doing this for a long time as well. I've been doing this work for 40 years. Sadly, it is very narrow. It can be esoteric. The reason it doesn't come up is because everybody agrees that the statute is applied the way that Hallmark is arguing here. I cannot tell you how many times where I have had the excess barrier, and I appreciate this anecdotal, it's not in the record, I'm answering the court's question, where I have the excess carrier for the tractor and the primary for the trailer pays first. For instance, I mean, you have American lines, you know, the people who ship their... I think we understand the point, and I should probably cut you off because we're beyond time, unless my colleagues have any further questions. Okay, well thank you very much for the helpful arguments. This case is submitted, and we are adjourned for the day and the week. Thank you both. Take care. Thank you.
judges: WALLACE, FRIEDLAND, Lasnik